2012 Ark. App. 331

**Mark Stephen HOWERTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–646.**

Court of Appeals of Arkansas.

May 9, 2012.

George M. Rozzell IV, George M. Rozzell IV P.A., Fayetteville, for Appellant.

Dustin McDaniel, Atty. Gen., Rachel H. Kemp, Asst. Atty. Gen., Little Rock, for Appellee.

ROBIN F. WYNNE, Judge.

In August 2010, Mark Stephen Howerton pled guilty to one count of computer child pornography and three counts of internet stalking of a child. After conducting a sentencing hearing, the trial court entered a judgment and commitment order in which it sentenced appellant to 120 months' suspended sentence for the computer child-pornography charge, 240 months' imprisonment for the first internet-stalking-of-a-child charge, forty-eight months' imprisonment for the second internet-stalking-of-a-child charge to run consecutively to the first internet stalking charge, and 120 months' suspended sentence on the third internet-stalking-of-a-child charge to run concurrently with the 120 months' suspended sentence on the computer child-pornography charge. Appellant was also ordered to complete the Reduction of Sexual Victimization Program while in the Department of Correction, to comply with sex-offender registration requirements, and to undergo sex-offender treatment counseling upon his release from incarceration. One of the conditions of appellant's suspended imposition of sentence on the computer child-pornography charge is that he refrain from having access to the internet or unsupervised con-

tact with minors during the course of the suspended sentence. Appellant now appeals, alleging error in his sentencing. We affirm the trial court, but modify the judgment as detailed below.

When appellant pled guilty, the following agreed statement of facts was entered into the record:

In March 2009, Mark Stephen Howerton began a 5½ month correspondence via internet chat and email, with an individual he believed to be a fourteen (14) year-old female named "Chloe" residing in Miami, Oklahoma. This individual was, in fact, Detective Chris Leaman with the Miami, Oklahoma Police Department.

During the course of this correspondence, Mr. Howerton routinely sent to "Chloe" photographs and video of his penis and him masturbating. He informed "Chloe" that he would often cruise around the Promenade Mall and masturbate while watching young girls walking around the mall. Mr. Howerton sent "Chloe" images of one such event.

Mr. Howerton frequently solicited "Chloe" to send him nude pictures of herself and photos of her engaging in sexual contact with other minors that "Chloe" mentioned were her friends.

In addition, Mr. Howerton, on at least three occasions, solicited a meeting with "Chloe" for the purpose of engaging in sexual intercourse and deviate sexual activity with "Chloe."

Prior to the sentencing hearing, appellant filed a motion in limine to exclude certain opinion testimony of probation officer Mike Markum and evidence related to guilt not presented in the first stage of this case. In the motion, appellant objected to certain portions of a presentence report prepared by Mr. Markum that he alleged constituted opinions regarding appellant's psychological state that Mr. Markum was not qualified to give.

At the sentencing hearing, appellant objected to the admission of the presentence report by Mr. Markum and the transcript of the chats between appellant and "Chloe." The trial court denied appellant's motion in limine as to both the presentence report and the chat transcript. Kimberly Ray, appellant's sister, testified that appellant dated two girls who were "very abusive" toward him. Ms. Ray also testified that their mother had recently passed away after an illness that overlapped the criminal proceeding. She denied ever feeling that appellant was a threat to her children. Ms. Ray stated that she did not have knowledge of appellant having any sexual attraction to children prior to this incident, although she was aware of his previous offenses of indecent exposure. Ms. Ray admitted that it would scare her to allow her daughter to be around someone who was not her brother but who had admitted to the same activity as appellant. Sherry Kick testified that she had been in a relationship with appellant for a year and eight months and that she had no problems with appellant being around her daughter, who was thirteen at the time of the hearing.

Appellant testified that he was convicted of indecent exposure in 1995 and again in 1999. He admitted on cross-examination that he did not get caught the first time he exposed himself. He stated that, at the time of his online activity, he had involuntarily left a relationship with a woman for whom he cared. Appellant admitted that he learned early that "Chloe" claimed to be fourteen and that he initially had doubts about his conduct. Appellant denied that he was seeking out teenagers. He claimed that, because the relationship was over the internet, it was not real in his mind. He admitted to discussing the pos-

sibility of meeting with "Chloe" but denied ever determining a place to meet. Appellant said that if "Chloe" had shown up at his door, he would have been "scared to death" because the relationship would have become real at that point.

Appellant stated that he felt Detective Leaman instigated the chats. He claimed that "Chloe" played an aggressive role during the chats. He stated that, because "Chloe" claimed to have sexual experience he would hope people of that age did not have, it made him feel as though he were not corrupting someone who was totally innocent. Appellant claimed that the first time he masturbated while driving around the Promenade Mall was when he was chatting with "Chloe." Appellant also admitted to showing "Chloe" video of him masturbating within seven to eight minutes of the first chat. Appellant denied trying to groom "Chloe" into trusting him and having sex with him. According to appellant, he was not being serious when he talked to "Chloe" about wanting to expose himself to Ms. Kick's minor daughter.

Helen Miller, a therapist who began treating appellant in August 2009, testified that appellant was lonely and seeking a relationship. She stated that she thought appellant continued to interact with "Chloe" because "Chloe" admired him and he is secretive. She stated she did not believe appellant interacted with "Chloe" because of her age. Ms. Miller also stated that appellant believed he would not get caught and that she felt he drew a boundary at actually meeting "Chloe." Ms. Miller further stated that she does not believe that exhibitionism and cyber-crimes are precursors to rape. She stated that on a low-moderate-high risk scale, she would rate appellant as moderate.

The trial court continued the hearing in order to read the documentary evidence, which included the presentence report, the chat-room transcript, and Ms. Miller's report. When the hearing resumed, the trial court pronounced appellant's sentence after hearing closing arguments by the parties. On February 25, 2011, appellant filed an objection to the length and conditions of his sentence and a motion for reconsideration. The judgment and commitment order was entered on February 28, 2011. Appellant's posttrial motion was denied in an order entered on March 22, 2011. This timely appeal followed.

■ Appellant's first point on appeal is that the trial court abused its discretion when it allowed admission of cumulative evidence not introduced for any relevant sentencing purpose. Trial courts have broad discretion in deciding evidentiary issues, and we will not reverse absent an abuse of discretion. *Reed v. State*, 2012 Ark. App. 225, 2012 WL 1111428. Appellant argues that, because the chat-room transcript was not presented at the guilt stage of the trial, it could not be admitted at the sentencing hearing. For support, he cites Arkansas Code Annotated section 16–97–103, which states that among the things that can be considered for the purposes of sentencing are relevant character evidence, evidence of aggravating and mitigating circumstances, and evidence relevant to guilt presented in the first stage. The supreme court has held that all relevant evidence on the question of sentencing may be considered by the sentencing body. *Crawford v. State*, 362 Ark. 301, 309, 208 S.W.3d 146, 151 (2005) (citing *Marshall v. State*, 342 Ark. 172, 27 S.W.3d 392 (2000)). According to appellant, section 16–97–103 is more restrictive than the holding in *Crawford* because the legislature stated in that section that evidence presented in the guilt phase of the trial could be considered. Appellant's argument contains at least one fatal flaw:

the legislature listed several other types of evidence that could be considered, including evidence relevant to guilt presented at the first stage. Evidence relevant to guilt considered at the first stage is listed as a separate type of evidence that can be considered, not as limiting the other types listed.

■ The transcript is relevant to the question of sentencing. At the sentencing hearing, appellant argued that he did not consider his chats with "Chloe" to be real because they occurred on the internet. He also argued that he was not looking for a young girl and that the officer posing as "Chloe" was aggressive in seeking to continue the chats and advance the relationship. The transcript was the best method for the trial court to gauge the veracity of appellant's attempts to downplay his activities. The transcript contains much relevant information not found in the agreed statement of facts. Our review of the transcript reveals that appellant stated to "Chloe" on several occasions that, as a young female, her sexual organs had attributes he would find pleasing if they had sex. He also admitted that the fact that she was only fourteen made him desire sex with her more. The transcript could also be seen to belie appellant's assertions that the chats were not evidence of a real relationship in his mind given that he told "Chloe" that he loved her, told her that he had wanted to have sex with a young girl for a long time, discussed what it would be like if they were married, indicated that he was trying to arrange to see her, told her that he would lack the willpower to resist his desire to have sex with her if he met her, asked during one session where he could go in order to expose himself to young girls, and told her at one point that he exposed himself to some girls around her age.

This information, not contained in the statement of facts, was relevant for the trial court to consider. The transcript also contains evidence that appellant was momentarily hesitant about chatting with a fourteen year old and that the detective posing as "Chloe" was aggressive in seeking to continue the online relationship. Although the contents of the transcript could certainly be seen as prejudicial, the probative value of the transcript outweighs any prejudicial effect for the reasons outlined above. The trial court did not abuse its discretion by allowing the transcript into evidence.

■ Appellant's next point on appeal is that the trial court abused its discretion when it allowed into evidence opinions of Mr. Markum that went beyond those required by Arkansas law. In the presentence report, Mr. Markum states that he believed appellant had no conflict of conscience to interfere with his behavior, that he was attempting to groom "Chloe" for sex, that appellant derived excitement from exhibitionism, and that appellant viewed "Chloe" as a goal, not a person. At the end of his report, Mr. Markum states that a psychologist who trained him told him that exhibitionism is frequently a precursor to rape.

Appellant argues that because Mr. Markum was not qualified as an expert, the personal opinions he expressed in the presentence report should not have been allowed into evidence. Arkansas Code Annotated section 5–4–102, which authorizes a court to order a presentence investigation, states that the presentence investigation should be conducted by a presentence officer or another person designated by the court and should include an analysis of the circumstances surrounding the commission of the offense, the defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits, and any other matter that the investigator deems rele-

vant or the court directs to be included. Although appellant spends the majority of his argument equating the opinions expressed by Mr. Markum to expert testimony, his report was not admitted as expert testimony, and the court assured appellant it would give the report the proper weight. Also, appellant was aware of the contents of the report and elicited contradictory testimony from Ms. Miller. The trial court did not abuse its discretion by admitting the presentence report into evidence.

Appellant's third point on appeal is that the trial court abused its discretion when it sentenced him to a term of years without just cause for departure from the sentencing guidelines. Appellant is precluded from raising this point on appeal. Except for the exception contained in Arkansas Rule of Criminal Procedure 24.3(b), there shall be no appeal from a plea of guilty or nolo contendere. Ark. R.App. P.-Crim. 1(a) (2011). There are two recognized exceptions to this rule. An appeal may be taken after a guilty plea when the issue on appeal is one of evidentiary errors that arose after the plea but during the sentencing phase of the trial, regardless of whether a jury was impaneled or the trial judge sat as the trier of fact during that phase, *Johnson v. State*, 2010 Ark. 63, 2010 WL 1006439, and an appeal may be taken from the denial of a postjudgment motion to amend an incorrect or illegal sentence following a guilty plea, *see Reeves v. State*, 339 Ark. 304, 5 S.W.3d 41 (1999). Neither of those exceptions applies here. This particular point on appeal involves no assertion of evidentiary error. Appellant also does not assert that his sentence is incorrect or illegal; he is instead requesting that his sentence be modified in light of the Arkansas Sentencing Guidelines. We affirm on this point.

Appellant's final point on appeal is that the trial court erred when it banned him from using the internet for ten years after his release from imprisonment. Appellant's argument is that the condition is unduly burdensome and overly restrictive. This argument does not fall within any of the exceptions, discussed above, to the general rule that no appeal may be taken from a guilty plea. Therefore, appellant cannot challenge the condition on appeal. We affirm on this point.

Although appellant's argument regarding the length of his sentence does not raise the issue of an incorrect or illegal sentence, our review of the judgment of the trial court reveals an illegal condition imposed on appellant during his incarceration that must be addressed. In the judgment, the trial court ordered appellant to complete the Reduction of Sexual Victimization Program during his incarceration. While a trial court may impose conditions on a suspended imposition of sentence or a term of probation, a trial court does not have jurisdiction to impose conditions on a sentence of incarceration. *Richie v. State*, 2009 Ark. 602, 357 S.W.3d 909; *Stribling v. State*, 2011 Ark. App. 635, 2011 WL 5083247. A sentence is illegal when the trial court lacks the authority to impose it. *Stribling, supra*. Problems of void or illegal sentences are treated similarly to problems of subject-matter jurisdiction and may be reviewed even if not objected to on appeal or raised in the trial court. *Harness v. State*, 352 Ark. 335, 101 S.W.3d 235 (2003). Therefore, we affirm the judgment and commitment order as modified to reflect that appellant is not required to complete the Reduction of Sexual Victimization Program during his incarceration.

Affirmed as modified.

VAUGHT, C.J., and GLADWIN, J., agree.